UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Mohamed Nassirou Sinare,

Petitioner,

**MEMORANDUM & ORDER**
26-CV-02579 (DG)

-against-

LaDeon Francis, *et al.*,

Respondents.
---------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

On April 30, 2026, Daouda Konkobo, proceeding *pro se*, filed a "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241," with the representation that it was being filed on behalf of Mr. Konkobo's cousin, Mohamed Nassirou Sinare (hereinafter, "Petitioner"), who was detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. *See* Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition" or "Pet."), ECF No. 1; Declaration of Daouda Konkobo and exhibit thereto, ECF No. 1-2.

The Petition stems from Petitioner's 2026 arrest by U.S. Immigration and Customs Enforcement ("ICE") and his resulting detention and is brought in three Counts. *See generally* Pet.[1] The Petition principally asserts that Petitioner's detention violates his due process rights under the Fifth Amendment to the United States Constitution and principally seeks Petitioner's release. *See generally* Pet.

---

[1] Count One is styled "Constitutional Claim" and asserts that "Petitioner['s] detention violates his right to substantive and procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution;" Count Two is styled "Statutory Claim" and asserts that "Petitioner's continued detention violates the Immigration and Nationality Act, The Administrative Procedure Act, and the U.S. Constitution's Fifth Amendment Due Process Clause;" and Count Three seeks attorney's fees and costs under the Equal Access to Justice Act "[i]f [Petitioner] prevails."

By letter dated May 7, 2026 (the "Response"), Respondents opposed the Petition. *See* Response, ECF No. 4; *see also* Declaration of Deportation Officer Jonathan Quizhpi and exhibits thereto, ECF No. 4-1.

On June 5, 2026, a hearing was held before the undersigned, at which Petitioner was present and was assisted by a French interpreter. *See* June 5, 2026 Minute Entry; Transcript of June 5, 2026 Hearing ("Tr."), ECF No. 10. At the hearing, Petitioner indicated that the Petition was filed by Mr. Konkobo at Petitioner's request and with Petitioner's knowledge and that the information contained in the Petition had been provided to Mr. Konkobo by Petitioner. *See* Tr. 5-7, 10-11.

Following the hearing, Petitioner filed additional documents, *see* ECF No. 6, and Respondents filed additional letters, *see* ECF No. 8 (June 17, 2026 letter providing supplemental information); ECF No. 9 (July 20, 2026 letter filed in response to the Court's Order of July 16, 2026 directing Respondents to provide certain information).

* * *

In summary and substance and as particularly relevant to the Court's decision herein, Petitioner argues that his detention violates his procedural due process rights under the Fifth Amendment because he was detained without notice, an opportunity to respond, or an individualized determination that he posed a risk of flight or danger to the community and Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) and that his detention therefore is mandatory.

For the reasons set forth below, the Petition is GRANTED to the extent that it seeks Petitioner's release.

## RELEVANT FACTUAL BACKGROUND[2]

Petitioner is a citizen of Burkina Faso. Petitioner entered the United States without inspection at or near Sasabe, Arizona on or about September 1, 2024 and on the same day, was encountered by United States Border Patrol agents, arrested, transported to a Border Patrol facility for further processing, processed for expedited removal pursuant to 8 C.F.R. § 235.15, and issued and served with a Notice and Order of Expedited Removal.

Subsequently, Petitioner expressed a fear of returning to Burkina Faso and the Notice and Order of Expedited Removal was vacated pursuant to 8 C.F.R. § 208.30 and Petitioner was placed in removal proceedings under section 240 of the Immigration and Nationality Act, 8 U.S.C. § 1229a.

On November 10, 2024, Petitioner was served with a Notice to Appear (Form I-862) dated November 5, 2024 (the "2024 NTA"). The 2024 NTA ordered Petitioner to appear before an immigration judge on April 15, 2025. The 2024 NTA was not filed with the Executive Office for Immigration Review ("EOIR").

On December 4, 2024, Petitioner was released on his own recognizance and issued and served with an Order of Release on Recognizance (ICE Form I-220A) (the "OREC"). The OREC stated, *inter alia*: "You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with [certain] conditions."

---

[2] The information set forth in this section is drawn from the parties' filings – including the Declarations – and representations made at the June 5, 2026 hearing and appears to be uncontested. The Court sets forth in this section only those facts of particular relevance to the Court's decision herein but notes that the Court has considered all of the filings and all of the facts in the record before the Court.

On February 2, 2026, Petitioner reported to 26 Federal Plaza in New York, New York pursuant to the OREC. At that time, the OREC was canceled, Petitioner was arrested pursuant to a Warrant for Arrest of Alien (Form I-200), and Petitioner was detained pending resolution of his removal proceedings.

On February 3, 2026, Petitioner was transferred to a detention facility in New Jersey and on February 11, 2026, Petitioner was transferred to the MDC.

On February 23, 2026, Petitioner was issued and served with another Notice to Appear (the "2026 NTA"), which Respondents refer to as a "superseding NTA." The 2026 NTA was filed with the EOIR.

Petitioner filed an application for relief from removal with the EOIR, a merits hearing was held, the Immigration Judge issued an order of removal, and Petitioner filed an appeal to the Board of Immigration Appeals ("BIA").[3]

## STANDARD OF REVIEW

As the United States Court of Appeals for the Second Circuit has recognized, Title 28, United States Code, Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *See Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).

## DISCUSSION

As set forth below, the Petition must be granted because Petitioner is "in custody in violation of the Constitution" – specifically, in violation of the Fifth Amendment. Here, the

[3] Petitioner initially failed to pay the filing fee and the appeal was rejected. Petitioner thereafter cured the deficiency and Respondents represent that the appeal was forwarded to the BIA on June 16, 2026. The record does not reflect any decision on the appeal.

record reflects that Petitioner's detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225, and that Petitioner did not receive the process to which he was entitled prior to being detained.[4]

## I. Applicable Law

### A. Due Process

The Second Circuit has noted that the Due Process Clause of the Fifth Amendment "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). In addition, the Second Circuit has noted that "[n]oncitizens are also entitled to challenge through habeas corpus" the legality of their detention. *See id*. And the Second Circuit has applied the three-factor balancing test as provided in *Mathews v. Eldridge*, 424 U.S. 319 (1976) in determining the adequacy of process in the context of civil immigration confinement. *See Velasco Lopez*, 978 F.3d at 851 (noting that the three *Mathews* factors are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" (quoting *Mathews*, 424 U.S. at 335)).

[4] In the Response (filed prior to the June 5, 2026 hearing), Respondents stated with respect to the issue of "next friend" standing: "Respondents are not going to move to dismiss on the basis of Konkobo's lack of standing, and will not object to Konkobo filing papers or receiving mail for the incarcerated [*pro se*] Petitioner. However, Respondents do not agree that Konkobo has standing to bring this habeas action." *See* Response at 4-5. At the June 5, 2026 hearing – after Petitioner provided information with respect to Mr. Konkobo and the circumstances of the filing of the Petition and after Petitioner confirmed under oath that the information in the Petition was accurate – the Court indicated that it would accept and consider the Petition. *See* Tr. 5-7, 10-11.

### B. Relevant Statutory and Regulatory Provisions

8 U.S.C. § 1225 ("Section 1225")

8 U.S.C. § 1225(a)(1) provides:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(b)(1) sets forth certain procedures applicable to the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled."

8 U.S.C. § 1225(b)(1)(A)(ii) provides that certain aliens shall be referred for an interview by an asylum officer under 8 U.S.C. § 1225(b)(1)(B), including aliens who are "arriving in the United States."[5]

8 U.S.C. § 1225(b)(1)(B)(ii) provides:

> If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

8 U.S.C. § 1226 ("Section 1226")

8 U.S.C. § 1226(a) provides:

---

[5] Also among those who shall be referred for an interview by an asylum officer are aliens who are described in 8 U.S.C. § 1225(b)(1)(A)(iii). Respondents do not, however, appear to assert that Petitioner received the designation referenced in 8 U.S.C. § 1225(b)(1)(A)(iii).

8 U.S.C. § 1225(b)(1)(A)(ii) reads in its entirety:

> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General –
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on –
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole; but
>
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(b) provides:

> The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

With respect to the discretionary exercise of release authority under 8 U.S.C. § 1226, the implementing regulations provide for certain procedures to be followed. *See generally* 8 C.F.R. § 236.1; *see* 8 C.F.R. § 236.1(c)(8) (providing in relevant part that "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion," and under certain specified conditions, release an alien "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding"); *see also* 8 C.F.R. § 236.1(d) (providing for appeals from initial custody determinations).

## II. Petitioner's Detention Is Not Pursuant to Section 1225(b)(1)(B)(ii)

Respondents assert that Petitioner was detained pursuant to Section 1225(b)(1)(B)(ii), that the detention authority was not changed by Petitioner's release on recognizance in

December 2024, that when the OREC was canceled on February 2, 2026, Petitioner was again detained pursuant to Section 1225(b)(1)(B)(ii), and that Petitioner's detention is mandatory. *See* Response at 2-4; ECF No. 8 at 1-2; ECF No. 9 at 1. The record before the Court, however, does not support the assertion that Petitioner's detention is pursuant to Section 1225(b)(1)(B)(ii).

As set forth above, Section 1225(b)(1)(B)(ii) provides that an "alien shall be detained for further consideration of the application for asylum" if "the officer determines at the time of the interview that [the] alien has a credible fear of persecution." Here, however, the record does not reflect that the triggering credible fear determination was made – in either 2024 or 2026. As to 2024, after Petitioner expressed a fear of returning to Burkina Faso, the Notice and Order of Expedited Removal was vacated pursuant to 8 C.F.R. § 208.30 and Petitioner was placed in removal proceedings under section 240 of the Immigration and Nationality Act, 8 U.S.C. § 1229a – but, as reflected on the 2024 NTA, no credible fear determination was made. *See* 2024 NTA, ECF No. 4-1 at 9 (ECF-generated pagination) (leaving unchecked the box to check to indicate that "an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture"). As to 2026, Respondents do not even assert that a credible fear interview occurred in 2026. By its plain terms, Section 1225(b)(1)(B)(ii) does not apply here.

Furthermore, the OREC itself indicates that Section 1225(b)(1)(B)(ii) does not apply here. The OREC expressly informed Petitioner that he was being released "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations" – *i.e.*, pursuant to 8 U.S.C. § 1226. *See* OREC, ECF No. 4-1 at 13-16 (ECF-generated pagination). Similarly, the February 2, 2026 Warrant for Arrest indicates that Section 1225(b)(1)(B)(ii) does not apply here. The February 2, 2026 Warrant for Arrest – like the OREC – expressly references section 236 of the Immigration and Nationality Act, 8

U.S.C. § 1226. *See* Warrant for Arrest, ECF No. 4-1 at 23 (ECF-generated pagination).

It also bears noting that the United States Supreme Court has stated that 8 U.S.C. § 1226 "applies to aliens already present in the United States" and "creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 84-85 (2d Cir. 2026) (discussing *Jennings*).

The record here compels the conclusion that Petitioner's detention is governed by Section 1226, not Section 1225.[6]

## III. Petitioner's Detention Violates the Fifth Amendment

Having concluded that Section 1226 governs Petitioner's detention, the Court considers whether Respondents provided Petitioner with the process due to him prior to detaining him in February 2026.

Under Section 1226, which, as noted above, provides for the discretionary exercise of release authority, Petitioner was entitled to certain process. Petitioner, however, received no process. Respondents detained Petitioner – purportedly under Section 1225(b) – without notice, an opportunity to be heard, or any individualized custody determination.

Applying the *Mathews* factors, the Court concludes that Petitioner's procedural due process rights were violated. Here, the first *Mathews* factor weighs heavily in Petitioner's favor – indeed, Petitioner invokes "the most significant liberty interest there is – the interest in being

---

[6] Although Respondents are correct that in *Barbosa da Cunha*, the Second Circuit addressed a different subsection of Section 1225(b) than the one that Respondents assert applies here, *see* Response at 2 n.2, the *Barbosa da Cunha* decision nevertheless is instructive and its reasoning – and recognition of the distinction between noncitizens already present in the United States and those arriving in the United States – supports the conclusion that Section 1226, not Section 1225, applies here.

free from imprisonment," *see Velasco Lopez*, 978 F.3d at 851; the second *Mathews* factor also weighs in Petitioner's favor – the risk of erroneous deprivation of Petitioner's liberty interest is high on the record before the Court; and as to the third *Mathews* factor, although Respondents have a "weighty" interest in the efficient administration of the immigration laws, *see Landon v. Plasencia*, 459 U.S. 21, 34 (1982), Respondents would not be overly burdened by providing the process required.

Because Petitioner's Fifth Amendment procedural due process rights were violated, he is "in custody in violation of the Constitution" and the Petition therefore is granted to the extent that it seeks Petitioner's release. *See* 28 U.S.C. § 2241.[7]

**CONCLUSION**

For the reasons set forth above, the Petition, ECF No. 1, is GRANTED to the extent that it seeks Petitioner's release.

Respondents are directed to release Petitioner from custody and to file a letter certifying such release no later than 5:00 p.m. on August 20, 2026.

The Court expresses no view on whether Petitioner could be re-detained in the future, an issue that is beyond the scope of the instant Order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of

---

[7] Having determined that Petitioner's procedural due process rights were violated and that he is entitled to a writ of *habeas corpus* on that basis, the Court need not – and does not – address Petitioner's remaining arguments.

To the extent that Petitioner requests an award of attorney's fees under the Equal Access to Justice Act, such relief is unavailable. *See S.E.C. v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994) (holding that "a *pro se* litigant may not recover attorney's fees under the EAJA" (footnote omitted)).

an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment, close this case, and mail a copy of this Order to Petitioner.

SO ORDERED.

/s/ Diane Gujarati
DIANE GUJARATI
United States District Judge

Dated: August 19, 2026
Brooklyn, New York